IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARK ALFRED DAVIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, )<br>Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-14-121-SPS |

## OPINION AND ORDER

The claimant Mark Alfred Davis requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born November 29, 1966, and was forty-six years old at the time of the most recent administrative hearing (Tr. 426). He received asbestos abatement training in 1988, completed his GED in 2002, and has worked as an electrician (Tr. 152, 411). The claimant alleges that he has been unable to work since March 6, 2008, due to a back injury, anxiety, and panic attacks (Tr. 145).

## Procedural History

On February 13, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Charles Headrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 11, 2010 (Tr. 14-20). The Appeals Council denied review, but this Court reversed in Case No. CIV-11-282-SPS, and remanded with instructions for the ALJ to properly assess the claimant's credibility, along with a Third Party Function Report (Tr. 482-493). ALJ Lantz McClain then held a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated April 17, 2013 (Tr. 394-413). The Appeals Council again denied review, so ALJ McClain's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), *i. e.*, the claimant could lift/carry ten pounds frequently and occasionally, stand/walk up to two hours in an eight-hour workday, and six at least six hours in an eight-hour workday, all with normal breaks. Additionally, he found that the claimant was limited to simple, repetitive tasks, and was able to relate to supervisors and co-workers only superficially, but was unable to work with the public (Tr. 401). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *e. g.*, touch-up screener or final assembler (Tr. 412).

## Review

The claimant contends that the ALJ erred: (i) by failing to perform a proper credibility assessment as instructed on remand, and (ii) failing to properly weigh the medical opinion evidence in the record. The Court finds that the ALJ *did* err in his assessment of the medical opinion evidence, and the Commissioner's decision is therefore reversed.

The ALJ found that the claimant had the severe impairments of status post lumbar surgery and bipolar disorder (Tr. 397). Because the medical records in this case have been thoroughly summarized in previous decisions of this Court and by ALJ McClain, the Court declines to reproduce them here except to discuss their impact on the present appeal. In the most recent ALJ decision, ALJ McClain summarized the claimant's

hearing testimony and this Court's previous summary of the medical evidence, then discussed each of the medical records in turn. As to the claimant's physical impairments, the ALJ discussed the records from the claimant's treating orthopedic surgeon, Dr. Boone, who treated the claimant from May 2008 through January 2009, and again on August 6, 2012. On January 14, 2009, Dr. Boone stated that the claimant had good radiographic fusion, that the claimant should only pursue employment of a sedentary or light nature, and that vocational rehabilitation or retraining was needed (Tr. 924). He then indicated that the claimant had a partial permanent impairment to the whole person of 17% (Tr. 924). The ALJ gave this opinion "greatest weight" because Dr. Boone stated the claimant had the capacity for sedentary work, and found he was not limited further than sedentary work (Tr. 407). The ALJ "accept[ed]" Dr. Boone's August 2012 diagnoses of postlaminectomy syndrome, and chronic back pain with a history of a previous fusion, but declined to give his opinion controlling weight as unsupported by physical examination when he stated that the claimant was "highly unlikely" to return to work since he had not worked since 2008, and that, "I feel that there will probably be hours every day, days every week, and weeks in every month that he would not be able to pursue even light or sedentary work" (Tr. 409, 1056). Dr. Boone's notes indicate that he had not seen the claimant since 2009 when he released him to permanent restrictions to sedentary work, with a need for vocational rehabilitation or retraining. Upon examination in 2012, the claimant ambulated leaning on a cane, had diffuse superficial tenderness to light touch over the lumbar spine, had good motor strength in both lower

extremities at 5/5, ankle reflexes at 1/4, knee reflexes at 2/4, no clonus, good range of motion of hips and knees, and negative straight leg raising (Tr. 1056).

Dr. Hendricks's opinion was given little weight because it was based on a physical exam prior to surgery and the expectation of physical therapy (Tr. 407). The ALJ gave physical therapist Platt's "other source" opinion from December 9, 2008, that he could do light work above the waist and less than sedentary work below the waist, "little weight" because the claimant tolerated activity and progressed toward therapy goals (Tr. 407-408, 937-941). At that time, treatment notes also reflected that the claimant reported significant pain increase with prolonged sitting and bending or lifting, along with continuing to feel like his legs were weak (Tr. 937).

The ALJ also noted that Dr. Theresa Loftin, a family physician, treated the claimant from 2005 through July 13, 2009, with medications related to pain and anxiety/depression, and that the claimant did not begin treatment with another physician until August 10, 2011. The ALJ then stated that the gap in treatment was not consistent with disabling pain (Tr. 408). Dr. Tye Ward managed the claimant's pain medications beginning August 10, 2011, and stated on February 2, 2012 that the claimant's pain was most likely affecting his quality of life and ability to perform activities of daily living, but declined to estimate the degree of disability (Tr. 1029). The ALJ assigned no weight to this opinion, but stated he considered the claimant's pain in his RFC assessment, and noted references to the claimant's use of alcohol reduced the claimant's credibility (Tr. 408).

The ALJ then found Dr. Boone's 2012 opinion inconsistent with that of Dr. Traci Carney, who had assessed the claimant a year earlier on November 12, 2011, and whose opinion he assigned "some weight" because she examined the claimant (just as Dr. Boone did in 2012) (Tr. 409). Dr. Boone's findings, as stated by the ALJ and listed above, included ambulation by leaning on a cane, diffuse and superficial tenderness to light touch of the lumbar spine (Tr. 409). The ALJ then noted Dr. Carney's findings that the claimant had limited range of motion of the lumbar-sacral spine, with tenderness, pain, and muscle spasm, along with weak heel/toe walking secondary to pain, but did not explain whether or to what extent those findings affected his RFC assessment (Tr. 409). He reiterated that he gave Dr. Boone's 2009 statement the greatest weight because that indicated that the claimant had the capacity for work, and that he found the claimant was not limited further than sedentary work.

The ALJ then turned to the opinions of the state reviewing physicians, who found: (i) in 2009 that the claimant could perform sedentary work with postural limitations, and (ii) in 2011 that he could perform light work with postural limitations (Tr. 355-361, 410-411, 986-992). He then determined that a "different interpretation of the earlier records," based on the claimant's credible hearing testimony "consistent with the medical evidence in the record," justified a different result from their recommendations (Tr. 410-411). The ALJ determined that the claimant's "statements concerning the intensity, persistent and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision," but did not point to any portion of the claimant's testimony that he *did* find

credible or consistent with the medical record other than to state that the claimant's pain was limiting but not disabling (Tr. 403-411).

The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). Likewise, the opinions of physicians such as consultative examiners must be evaluated for the proper weight. "An

ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider [the *Watkins*] factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).

Here, the ALJ summarized the claimant's testimony as well as the medical record, but engaged in improper picking and choosing in order to reach his RFC assessment, essentially rejecting the opinion of every person who treated or examined the claimant and provided an opinion, except for Dr. Boone's 2009 opinion. This is particularly important where, as here, the ALJ's sole reason for adopting Dr. Boone's 2009 opinion is that it indicated the claimant could still work, but the ALJ failed to explain why the claimant's documented reduced range of motion and continued back pain nevertheless enabled him to perform sedentary work with no postural limitations, particularly with no consideration of a sit/stand option. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.")

[citations omitted]. This is also problematic because it indicates that the ALJ did not conduct a proper longitudinal assessment of the claimant's impairments under 20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation.").

This is bolstered by the opinion of Mr. Platt, the claimant's physical therapist, whose opinion the ALJ rejected. Social Security regulations provide for the proper consideration of "other source" opinions such as those provided by Mr. Platt herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" and by considering 20 C.F.R. §§ 404.1527, 416.927 factors in determining the weight of these opinions), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *1, *6 (Aug. 9, 2006) (discussing considerations of evidence from sources who are not acceptable medical sources and stating that "[a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The relevant factors for evaluating opinion evidence from other sources are: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the

source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether the claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *4-5; 20 C.F.R. § 404.1527(d). The ALJ stated in his written opinion that he gave Mr. Platt's opinion little weight and that it was inconsistent with the therapy notes stating that the claimant tolerated treatment and progressed toward therapy goals (Tr. 408). The ALJ takes issue with this Court's previous summary of the therapy notes because it referred to the claimant's continued complaints of pain and not the therapist's notes that the claimant was tolerating therapy and progressing toward his therapy goals. But the claimant accurately points out that he had not achieved the stated goals in many areas by the time of Mr. Platt's assessment (compare Tr. 839-840 to Tr. 911-910), and a therapy note from November 6, 2008, during his last month of physical therapy, stated, "Pt demonstrates decreased tolerance for fairly light clinic activity. Pt understands to not perform any activity that increases radicular [symptoms]. Pt typically refuses modalities" (Tr. 910). The ALJ's reliance only on the repeated statements that the claimant tolerated the physical therapy, and not other repeated indications of his reports of pain and documented (in)ability to perform each activity for the aspirational goal, was deficient because it (i) ignored his documented continued complaints of pain and consistent performance of therapies for five minutes of duration instead of the goal of fifteen minutes, and (ii) tolerating treatment and progressing with therapy is not anathema to retaining significant limitations. *See also Hardman*, 362 F.3d at 681 (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence

favorable to his position while ignoring other evidence."), *citing Switzer*, 742 F.2d at 385-386.

Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate all the evidence. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 28th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**